Campbell, Chief Jmtice, court:
delivered the opinion of the
The plaintiff contracted to do certain interior work in the New York post office building. The amount involved, including additions to the work and increases in amounts, was largely in excess of $1,000,000. Other parts of the work incident to a completion of the building were done by other contractors, and all bidders in the work or parts thereof were cautioned by the specifications that there might be “ some hindrances and delay ” incident to the performance of work in the building by various contractors at the same time. The time for completing the entire work undertaken by plaintiff was fixed by the specifications upon which its bid was based to be on or before July 16, 1906. It was not completed at that time, and in October following a supplemental contract extended the time within which the plaintiff should perform to June 1,1901. It was not until October of 1901 that the building was accepted by the Government so far as plaintiff’s work was concerned, and when finally taken possession of there were some minor matters which the architect claimed were not completed.
The building was a large one, the plans for it were elaborate and the details of construction were almost innumerable. A number of different contractors were engaged upon different parts of it. There were suspensions of the work and alterations in parts of it. That these things would occur *22 were well within the contemplation of all parties who undertook the work, as well as of the Government’s • representatives.
The plaintiff’s petition claims a number of items, and the findings of fact are extended so as to embrace the contentions of the parties. We think it unnecessary to discuss each of the items, because the facts found sufficiently show the proper conclusion deducible and deduced therefrom. There are two main questions of contention, one by the plaintiff upon the question of liquidated damages, and the other upon the question of a deduction on account of certain repair work.
The contract contains a clause providing for liquidated damages to be paid by the contractor in case he fails to perform within contract time. The act of June 6,1902, 32 Stat. 326, requires that clause in contracts such as this.
The work was not completed or accepted until October, 1907, or 121 days after the stipulated time in the supplemental contract, namely, June 1, 1907. In the attempted adjustment of that matter as made by the Treasury Department, and of which the contractor complains, he was charged with 109 days’ delay, the remaining 12 days having been deducted from the total because of delay by the Government in furnishing “ certain drawings.” The act of 1902 mentioned in the specifications empowers the Secretary of the Treasury to remit the whole or any part of the liquidated damages as in his discretion may be just and equitable. This act, being in existence when the plaintiff’s contract was made, must be read into the contract itself. In determining whether anything would be remitted the Secretary did not feel bound by the contract provision relative to the ascertainment of a cause of delay by the supervising architect, but appointed a board to investigate the facts and report to him with their recommendation as to whether any waiver of the liquidated damages should be made by him.
While it is argued with much force by the Government that this action of the Secretary is conclusive on the parties, we think the better view is against that contention when all the terms of the contract are considered. It provided that *23 the Government could suspend the work in whole or in part, and that for “ all such suspensions ” and other delays caused by the Government an allowance should be made to the contractor, and it also provided that no claim for damages shoidd be made by, or allowed to, the contractor for any damages arising out of delays caused by the Government. This latter provision is valid and enforceable against the contractor. Wells Bros. Go. case, 254 U. S. 83, 87 (54 C. Cls. 206). But the former provision requires that some account be taken of the “ suspensions ” in ascertaining what, if any, additional days’ time should be allowed the contractor. It is not every suspension of part of the work that will give the contractor additional time, but it must have been such a suspension of part that has operated to delay the whole work. If there were a suspension of a part that had no effect on the balance of the work, or where the contractor could proceed with other of the work unhindered by the particular suspension, it could not be said to have delayed the ultimate performance of the whole so as to entitle him to additional time. We are not concerned with suspensions prior to the supplemental contract of October, 1906, because that contract extended the time of performance and took account of delays to that time, but if a suspension made prior to the October contract on part of the work was not lifted until after that date, and if such continued suspension of part so affected the whole of the work as to delay its completion within the contract time, then that suspension becomes material. And an instance of that kind happened. In August, 1906, an order directed the suspension of certain work, including marblework on the Bridge Street stairway No. 116, and the order to resume work was not issued until the end of March following — more than six months. The architect himself states that the contractor was delayed by these items and would doubtless claim exemption upon them, but also concluded that the primary cause of the delay was the contractor’s refusal to submit a reasonable bid for certain work. We take a different view of this matter and hold that inasmuch as the department could have fixed the price it need not have waited upon the contractor’s bid, and in fact did *24 not so wait, and that the suspension made in August and continued until nearly April did operate to delay completion of the work, which according to the supplemental contract was due to be completed by June 1. As early as December, and several times thereafter, the contractor had called on the department to be allowed to proceed with incidents connected with this particular work. We have not found that a period equal to the entire time of the suspension should be added to the time the contractor had within which to complete, but that a portion of it should be so added. Similarly, on account of other suspensions the contractor should have additional time. The extension of one day for each day’s delay in the performance of the entire work caused by suspensions at divers times of parts of the work has been found in finding XXIII.
The contention by the plaintiff that he is not chargeable with any liquidated damages can not be sustained. The case of United Engineering Go., 234 U. S. 236, is not applicable to the instant case. The contract provides a definite period from which the liquidated damages are to be computed, and in case of delays by the Government or suspensions, in the circumstances stated above, it is provided that one day be added to the contractor’s time for each day of delay. These delays being ascertained, the time of completion is as definitely fixed as if written in the contract itself. The theory that the entire liquidated damage clause is defeated by a provision intended to protect and save it, and at the same time to accord to the contractor some relief, is not to be adopted where the contract shows plainly that its intent is to furnish the means of definitely ascertaining the period during which the contractor should be charged with the agreed damages. There is no question here of an apportionment of delays. The contract itself requires that under certain stated conditions additional days shall be given in which the contractor may perform, and it is the duty of the court to give effect to this provision. We have therefore ascertained the number of days which should be added to the contract period from June 1 and extended the time accordingly, as contemplated by the clause under consideration.
*25 The other question involves the withholding by the Government of $12,000, mentioned or referred to in Findings XXI and XXII.
In the contract the contractor undertook to guarantee the condition of the work for one year after acceptance. The sum mentioned was retained to pay for repair work which the contractor was called upon to do. It is true that the contractor suggested that a modification be made in the specification of certain material, and called attention to the fact that this material was not well suited to the climatic conditions, but nevertheless the provision to which he assented was incorporated in and made a part of the contract, and was to the effect that the condition was guaranteed for a definite period. It is too late, after contracting to do the repairs, to interpose the objection that the material (as in this case solid oak) was liable to warp. If it was not his purpose to guarantee the condition when oak was used the contract should not have said what it does say. If it be assumed that his judgment about the material to be used was better than that of the architect, it is yet true that he undertook to do the work, and guaranteed its condition with the material the architect had specified, and having failed and refused to do the repairs, the Government was within its rights when it caused them to be done at his expense. We think, however, that the contractor is not chargeable with the item of $1,072.26 for the architect’s services, nor for the other item of $205.09, this latter not definitely appearing to be for repair work which the contractor was obligated to do. The sum of these two items the contractor should recover, and he should recover the further sums shown in the court’s conclusion.
Judgment for plaintiff under Findings IX, XI, XII, XV, XVII, XVIII, XIX, XXII, XXIII, and XXIV, in the sum of $33,964.10. And it is so ordered.
Geaham, Judge; Hat, Judge; DowNet, Judge, and Booth, Judge, concur.