Hay, Judge,
delivered the opinion of the court:
The findings made by Commissioner Lewis, to whom this case was referred, have not been excepted to by either party, and the court therefore has adopted them as its own findings.
The essential facts in this case are that during the years 1915, 1917, and 1918 the plaintiff entered into eight separate written contracts with the United States whereby it agreed to manufacture and deliver a certain number of torpedoes at a fixed price per torpedo to the United States. Torpedoes manufactured in accordance with the terms of the contract were delivered by the plaintiff from time to time to the United States, and the plaintiff was paid the contract price therefor. At the time the contracts were completed and the payments made the plaintiff executed a form of release, which is set out in full in Finding XIII. This release was executed as to all the contracts except contract No. 1223, which differed from the other releases in this, that at the end of said release there was added the following proviso : “Provided, That this release shall not be taken to include claims arising under the said contract other than those which the Secretary of the Navy had jurisdiction to entertain.”
On August 20, 1917, there was created a board known as the Shipbuilding Labor Adjustment Board, which had for its purpose the adjustment of disputes which might arise concerning wages and working conditions of labor engaged in the construction or repair of shipbuilding plants or of hulls and vessels in private shipyards with the Emergency Fleet Corporation or the Navy Department. And on April 8, 1918, the President created the National War Labor Board. The duty of this board was to effect settlements of disputes and contentions arising between employers and employees in all branches of industry engaged in the production of ships or war supplies.
On June 18, 1918, the War and Navy Department entered into an agreement with certain employers and employees engaged in the manufacture of war supplies in the New York district. The plaintiff and its employees were *795 not parties to this agreement. This agreement is set ont in full in Finding IY.
On July 23, 1918, this memorandum of award was.sent to the plaintiff by one Alexander M. Bing, industrial service section. At the time the plaintiff received this memorandum it was employing a large number of men manufacturing torpedoes under the aforesaid contracts, and was not having any labor trouble in its organization, nor had its employees made any request for an increase of wages. Immediately after this the plaintiff was informed by an assistant to the Assistant Secretary of the Navy that there was to be a strike in the plant of the plaintiff in the next two days. The plaintiff then stated that there was nothing in the rumor and that there would be no strike, and that it was neither necessary or desirable to increase the wages ■of its employees at that time. Thereafter a Mr. McEntee. under appointment from the Navy Department as a member of one of the labor boards in the New York district visited "the plant of the plaintiff and notified its officials that a strike was impending. This the plaintiff denied, and stated that an increase of wages would result in an increase in plaintiff’s cost above that which had been estimated in the bids submitted by the plaintiff, and that the plaintiff would not increase the wages of its employees until it was assured that it would receive compensation for the increased cost which would result from said increase.
On August 23, 1918, the plaintiff was informed by letter from Bear Admiral Balph Earle, Chief of the Bureau of •Ordnance of the Navy Department, that the bureau desired it to make as the basis of its wage scale the schedule approved by the Navy Department in accordance with the general agreement between the employers and employees ■and the War and Navy Departments for New York City ■and vicinity, and in the same letter it was stated that if the plaintiff desired to request remuneration for the additional cost imposed upon it it could address a letter to the Secretary of the Navy requesting an investigation and examination by the Navy cost inspector as to the justness of its claim, and that upon a favorable report of this investigation a supplementary contract might be entered into by *796 the Navy Department with the plaintiff to cover the additional cost.
On August 27,1918, the Secretary of the Navy sent plaintiff the following telegram:
“August 27, 1918.
“ The department desires to call your attention to the agreement entered into by the War and Navy Departments with the employers and employees in the district of New York, which includes your plant, in regard to wages for machinists.
“ This agreement provides that first-class machinists shall receive 73c. and first-class toolmakers 79c. per hour. The department desires that you put these rates into effect at
your plant.
“ It is understood that in addition to this decision a 10 per cent increase in other trades will adjust certain labor differences in your works. To this the department is also agreeable.
“ Definition of who shall be rated as first-class machinists and other adjustments and applications of the New York decision will be handled by the special board appointed by the Army and Navy for that purpose.
“ Mr. Slocum will advise you of the letter sent him by the Navy Department as to the basis on which the Government will increase its payment to you under the award. Please post notice of your acceptance of the award immediately in your works to avoid possible labor disturbances. These rates are to begin September 2.
“(s) Josephus DaNiels.”
On September 10, 1918, the Chief of the Bureau of Ordnance of the Navy Department wrote to the plaintiff that the department desired it to adjust its wages in accordance with the agreement of June 18, 1918, and stated further that should it desire to make claim for additional remuneration because of the increase in wages it should write to the Secretary of the Navy asking for this as an extra. “ The department will then send an accountant to go over the books and records; and, if in the original bid no allowance has been made for any proposed increase of wages, an extra will be allowed contracts for the additional wages imposed by the New York award.”
Upon receipt of this letter the plaintiff decided to put into effect in its plant the schedule of wages provided for in the *797 ■award of June 18, 1918, and did put the said schedule of wages into effect as of September 2,1918.
On October 81, 1918, the plaintiff wrote to the Chief of ■the Bureau of Ordnance of the Navy Department, applying for increased compensation, and asking how it could be reimbursed the amounts expended for the increased labor. On December 16, 1918, the Chief of Ordnance wrote plain-biff a letter, which appears in full in Finding X.
On December 14, 1918, the Secretary of the Navy appointed a board of three naval officers to consider and determine the increased compensation, if any, due the plaintiff under the contracts here in suit by reason of the increased wages paid their employees under the schedule aforesaid. On July 14, 1919, this board submitted its report, the material portions of which are set out in Finding XII. The hoard recommended that the contract price for the 4,768 torpedoes, which was the whole number of torpedoes contracted for, be increased by the amount of $150 per torpedo, which would amount to an additional profit of $715,200 to the plaintiff; this report was approved by .the Chief of Ordnance of the Navy Department. On June 30, 1920, the Secretary of the Navy advised the plaintiff that under the decisions of the Comptroller of the Treasury there was no authority to pay the plaintiff, and the Secretary of the Navy did not approve the findings of the board. The plaintiff has not received this amount or any part thereof.
The plaintiff claims that paragraph second in all of the •contracts provides that changes may be made in the contracts, the cost of such changes to be determined by a board -of not less than three naval officers; and contends that the increased labor costs come under that provision of the contracts, and that the board was appointed in strict accordance with that provision, and that its findings were approved by the Chief of Ordnance. But a careful reading •of that provision shows that the changes contemplated were •changes in the composition and manufacture of the torpedoes, and did not relate to the increased or extra cost which might he incurred by reason of increased wages, iand the contract expressly provided, “ and all claims for *798 extra compensation by reason of or on account of such extra performance are hereby, and, in consideration of the premises, expressly waived.”' It is also to be observed that the board was not created with reference to this provision in the contract, but as a result of the controversy between the plaintiff and the Navy Department with regard to the schedule of wages which the department desired the plaintiff to enforce in its plant. The plaintiff in its demand for increased compensation at no time invoked this clause in the contract, and it was not until this suit was brought that this claim was set up.
The plaintiff contends that under the act of June 15, 1917, 40 Stat. 182, as amended by the act of July 1, 1918, 40 Stat. 720, the Secretary of the Navy had a right to modify the contracts of the plaintiff in furtherance of the public interest. It is not necessary to pass on this contention, for, as a matter of fact, the Secretary of the Navy did not modify the contracts.
The plaintiff in its contracts with the United States contracted to do .the work at a fixed price, with no reservations as to increase of wages. But it now claims that it was ordered by the Government to increase the wages of its employees, and that therefore the United States is bound for the increased cost which it incurred by its obedience of these orders. The record does not disclose that any such orders were issued. The communications addressed to the plaintiff by the Chief of Ordnance of the Navy were not orders, they ivere requests; the.plaintiff was requested to put into effect in its plant the schedule of wages which had been agreed upon by the Navy Department and the employers and employees engaged in manufacturing war supplies in the New York district. The plaintiff was not a party to this agreement, and was not bound to comply with the requests made to it. The plaintiff voluntarily complied with these requests; no liability was thereby assumed by the United States to pay these increased wages, and no officer of the Government had authority to create such a liability. The plaintiff must have known that there was no authority vested by law in the Secretary of the Navy to control it or. to compel it to pay any given rate of wages to its employees! *799 Tlie plaintiff paid these wages of its own volition; it took the risk of being paid for the increase in some way. The plaintiff asked the officials how it was to be paid, and it was told that it might be given a supplementary contract, thereby admitting that it could not be paid under the terms of the contract, but no such supplemental contract was ever entered into. The plaintiff was also told that if it desired “ to make claim for additional renumeration because of the increase of wages ” it could write a letter to the Secretary of the Navy asking for this as “ an extra.” This course was not taken by the plaintiff, though the plaintiff must have been familiar with that clause in the contracts which provided that all claims for extra compensation were expressly waived. The court can not do other-than enforce the terms of the contract; if what the plaintiff is claiming is extra compensation it can not be allowed. It was not within the power of the Secretary of the Navy to change or alter the terms of the contract to the detriment of either party.
If the United States imposed upon the plaintiff conditions not warranted by the contract or in other words breached •the contract, the plaintiff had its remedy — could have stopped work and sought damages for the breach. But the plaintiff as each of its contracts was completed accepted the contract price and executed releases which provided that the plaintiff released and forever discharged the United States of and from all manner of debts, dues, sum and sums of money, accounts, reckonings, claims, and demands whatsoever in law and in equity, for or by reason or on account of the said contract. These releases were executed by the plaintiff after its alleged claim for the increased cost of its work on the contracts on account of the increase of wages had arisen and while negotiations for the payment of the excess cost increased by the plaintiff by reason of the increase in wages were pending. The release executed with regard to contract No. 3223, dated January 5, 1918,' differed from all the other releases in that it contained a proviso: “ That this release shall not be taken to include claims arising under the said contract other than those which the Secretary of the Navy had jurisdiction to entertain.”
*800 The very execution of the releases of the seven contracts at the time when the plaintiff was asking for payment of its excess cost, was an admission on its part that it had no claim under the contracts. The provisions of contract No. 1223 were in totidem verbis the provisions of the other contracts; if there was no claim under them there was none under No. 1223. The mere reservation of a claim does not of itself create the claim, and if there was no valid claim which could be asserted under the provisions of the contract the reservation of such a claim could not breathe life into it. In view of these releases it must be held that the plaintiff has no claim for its alleged excess cost which it can assert in this court under the provisions of its contracts.
There is no claim made that the plaintiff is entitled to recover under an express or implied promise to pay the excess cost incurred by the plaintiff by reason of the increase of wages. No person had authority to make such a promise or to bind the Government.
Moreover it appears that this increase of wages was not put into effect until September 2, 1918. It does not appear how many torpedoes had been completed before this date, nor how many were completed after this date. It is therefore impossible for the court to arrive at what the excess cost incurred by the plaintiff was, and manifestly it can not fix the amount of the compensation.
This court can not go outside of the contracts, can not ignore the terms of contracts, and grant relief, although it may appear that there has been some wrong done, and some hardship suffered by individuals in their dealings with the Government. In such cases if a remedy is to be had it must be sought in Congress and not here. Claims of this character arising under similar circumstances have been acted upon by Congress, and some of them have been allowed, and to that forum the plaintiff must look for relief.
The petition of the plaintiff must be dismissed. It is so ordered.
Graham, Judge; DowNey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.