Green, Judge,
delivered the opinion of the court:
The facts in this case are not in controversy. The defendant admits that the plaintiff is entitled to recover judgment as asked in the petition unless an offset claimed by it on account of what it alleges to be an improper payment to the plaintiff constitutes a just counterclaim.
It appears that in 1911 the plaintiff agreed to deliver and install for defendant two dry-dock pumping plants within a certain period. Plaintiff manufactured the pumps on time and was ready to install them in accordance with the contract when it was directed by the Government to suspend performance because the pump well to be furnished by the Government was not ready. The pumps were accordingly stored until the well was ready, which was about two years after the contract date for installation thereof.
Before resuming work on this contract, the plaintiff requested revision of the contract price because of the increased cost of labor caused by the delay resulting from the pump well not being in condition to receive the equipment. After some correspondence, on July 12, 1920, and before the work was recommenced, the defendant agreed to revise the contract price to compensate the contractor for the proper increased labor cost of installing the plant. Subsequently a board was appointed to consider the claims made by the plaintiff for additional compensation, and after such consideration it assessed the increased cost owing to the delay at $6,545, and recommended that a supplemental agreement be drawn increasing the contract price in that amount. Thereafter a supplemental agreement dated March 28, 1921, the material portion of which is set out in Finding IY, was executed by the parties; and among other things it was provided therein that the Government would pay in full satisfaction of the increase in cost to the contractor resulting from the change in the time of installation, the said sum of $6,545. Plaintiff completed the work and received said sum, together with the amount provided under the original contract. The Comptroller General having ruled that the supplemental contract was without consideration and void, the defendant now seeks to set off the amount *239 paid under the supplemental contract against the claim made in the petition.
The issue in the case is whether the supplemental contract was valid. The defendant claims that its agents had no authority to make such an agreement and that it received no consideration therefor.
In support of defendant’s counterclaim, its counsel call attention to the provisions of the original contract with reference to delays in the work and damages which may be allowed therefor. A careful reading of the contract convinces us that all these provisions were made for the purpose of defining under what circumstances the plaintiff would, and under what it would not, be held responsible for delays in the prosecution of the work. Under certain circumstances the defendant might cancel the contract; under others a sum was to be deducted as damages sustained by the Government; under others an extension of time might be granted to the contractor. The portion of the contract that is material to the decision of this case is set out in Finding IY. It will be observed that it provides for the time of commencing and the time of completion of work, for the continuance of work after time, and for extension of time to the contractor; also for delays in completion, the sum deducted for which “being specifically agreed upon as a measure of damage to the Government by reason of delay in the completion of the work,” and that the contractor agrees that the contract price shall be reduced by such damages. There is also a provision with reference to unavoidable delay which is said to be such as result from causes which are beyond the control of the contractor. Counsel for defendant call attention to a provision in the same paragraph that “ Delays caused by acts of the Government will be regarded as unavoidable delays,” but the connection, we think, shows that what is meant thereby is that such delays would be considered unavoidable on the part of the contractor. Any other construction would be extremely unreasonable. An unlimited provision that delays caused by the Government, no matter how unreasonable, unnecessary, and even if willful and intentional, were *240 to be regarded as unavoidable on its part is something that the court can hardly believe the parties intended unless corroborated by further evidence as to the actions of the parties. But the evidence shows very plainly by the execution of the supplemental contract that this provision was inserted for the benefit of the plaintiff and not for the benefit of the defendant, and its real meaning is, we think, merely that the plaintiff was not to be mulcted in damages by reason of delays caused by the defendant.
When plaintiff, before proceeding with the installation, asked for a change in the contract to cover the increased cost of labor caused by the delay, the defendant did not dispute its obligation to so do. It agreed to pay the proper amount of the increase, convened a board in the manner, provided in paragraph 17 of the contract to estimate and check the increased cost because of the change of the installation date, and finally not only executed the supplemental contract but paid the plaintiff the amount in controversy herein and accepted a final release.
By all of these acts the defendant placed a construction upon the contract in accordance with which the plaintiff proceeded to complete the work. It is now bound by its own construction. See Metal Products Co. v. United States, 61 C. Cls. 997, 1013; Douglas Traction & Light Co. v. United States, 60 C. Cls. 268; District of Columbia v. Gallaher, 124 U. S. 505.
The actions of both parties showed unmistakably what their intentions were when the contract was executed.
We think also there was a breach of the original contract on the part of the Government. True, the Government did not expressly agree to have the pump well ready by any fixed time, but the contract provided that the plaintiff should install the pumps at a fixed date, and it could not do so unless the pump well was ready some time in advance of the date so fixed. There was an implied contract on the part of the Government that the well would be ready, and the agreement of the plaintiff to go on and complete the contract at a future date at an increased cost for labor and other matters furnished a consideration for the supple *241 mental agreement in the way of detriment to plaintiff and benefit to defendant.
The supplemental contract recited that the time of installing the pumping plant under the original agreement had been changed and that “ the time for the completion of the work * * * is hereby extended to June 15, 1921.” Obviously, this was in change in the original contract as to specifications. The case of H. E. Crook Co., 270 U. S. 4, is cited on behalf of defendant, but there are several important differences between the facts in that case and those in the case at bar which are noted in the opinion of the Supreme Court. There was the same kind of a provision with reference to delays on the part of the Government being regarded as unavoidable, but the court says this was “ probably inserted primarily for the contractor’s benefit as a ground for extension of time,” although it also says that this provision “ is not without a bearing on what the contract bound the Government to do.” But in particular and as decisive of the case, the Supreme Court says: “ The plaintiff agreed to accept in full satisfaction for all work done under the contract the contract price, reduced by damages deducted for his delays and increased or reduced by the price of changes, as fixed by the Chief of the Bureau of Yards and Bocks.” The provision of the contract is the same as in the instant case, but in the Orooh case the Chief of the Bureau of Yards and Bocks did not increase the contract price on account of changes; in the case at bar it appears without conflict that he did fix the increase after a board had been appointed to examine and ascertain the proper amount, and signed an agreement to pay the sum so fixed.
The case of E. W. Bliss Co. v. United States, 61 C. Cls. 777, was one in which the plaintiff sought to recover on account of increased cost in wages caused by acts of the Government. Becovery was denied by this court, but the Supreme Court in reversing this decision entered an order holding that there was authority to make a supplemental contract and that a consideration existed in the way of detriment to the plaintiff and benefit to the defendant (275 *242 U. S. 509). The case is not really as strong for the plaintiff as the one at bar because there was no breach of the contract on the part of the Government. But in both cases the acts of the Government caused an increased expense in completing the work above that contemplated by the contract. In the Bliss case no supplemental contract was made because the Secretary of the Navy followed the holding of the Comptroller General to the effect that such a contract would be unauthorized and void. In this case the supplemental contract was executed and carried out. In our opinion, every reason that would support a recovery in the Bliss case applies herein with the same or greater force.
It follows that the plaintiff is entitled to recover the amount wrongfully withheld from it by the defendant, to wit, $6,540.09, and judgment will be entered accordingly.
SiNNOtt, Judge; Moss, Judge; and Booth, Chief Justice, concur.
Geaham, Judge, took no part in the decision of this case.