GheeN, Judge,
on January 8,1940, delivered the opinion of the court:
This is a suit on a contract made with the defendant by Murch Brothers Construction Company, Inc., and performed by that company and its subcontractors. It was originally brought by the contractor. Thereafter, for reasons not necessary to be set out here, by leave of court the present plaintiff was substituted as trustee and has succeeded to all the rights of the contracting company.
The plaintiff seeks to recover the sum of $4,632.51, representing liquidated damages assessed and deducted by the contracting officer at the time of final settlement, and also the additional sum of $30,418.15 on account of damages and extra costs alleged to have been incurred in the performance of the contract, making a total of $35,110.12, for which he asks judgment.
On June 13,1929, the Murch Brothers Construction Company, Inc., made a contract with the United States Veterans’ Bureau for the construction of nine separate buildings with connecting corridors, together with certain roads"” walks, and grading, at the United States Veterans’ Hospital at Somerset Hills, New Jersey.
The contract required the work to commence within 10 calendar days after receipt of notice to proceed and to be completed within 350 calendar days thereafter. It further provided for the payment of liquidated damages of $200 a day for each calendar day beyond the date stated in the hid which the contractor might require to complete the contract. The terms *24 of the contract with respect to this matter are set out in. Finding 7.
The contract was awarded to Murch Brothers Construction Company, and notice to proceed with all the work except building No. 10 was received on July 12,1929. Notice to proceed with “attendants’ quarters No. 10” was received on September 26,1929, which was 76 days subsequent to the first notice to proceed with all the other buildings. Nothing was stated in this last notice as to when the building should be completed. The delay in giving this notice was due to the failure of the defendant to obtain good title to the site on which building No. 10 was required to be constructed.
All the contract work, except buildings Nos. 1, 5, and 10, was completed and accepted on September 24, 1930. Buildings Nos. 1, 6, and 10 were completed and accepted on September 27,1930.
The matters at issue in the case will be taken up in the order that they are submitted in argument.
As above stated, in making the final payment to the plaintiff, defendant deducted $4,632.57 as liquidated damages for failure to complete the work within the time required by the contract. Plaintiff insists that no liquidated damages could properly be assessed and seeks to recover the amount so deducted.
The provision of the contract with reference to liquidated damages is set out in Finding 7. It provided for the payment of $200 for each day beyond the date stated in the bid which the contractor might require to complete the contract. The recoi’d does not show the date stated in the contractor’s bid, but counsel on both sides assume that the contract in this respect followed the terms of the bid and, as stated above, required work thereunder to commence within 10 calendar' days after receipt of notice to proceed and to be completed within 350 calendar days thereafter. The contractor did not complete the work within 350 days from the time it was given a notice to proceed, but plaintiff contends that the provisions of the contract with reference to completion of the work and liquidated damages were entirely .abrogated through the acts of the defendant.
*25 It appears from the evidence that by reason of neglect on the part of the defendant, to obtain title to the premises on which building No. 10 was to be erected, construction work on that building had to be postponed. Consequently defendant did not serve a notice to proceed, as was clearly contemplated by the contract, but gave notice to proceed with the work except on building No. 10, and 76 days later gave notice to proceed with the work on the building last named. Later the defendant found it necessary to extend the time on all the buildings 61 days, which had the effect of granting a further extension on building No. 10 for that time beyond the 76 days already granted.
It was the duty of the defendant to acquire title, or at least control of the premises upon which the buildings were to be erected, prior to giving notice to the contractor to proceed with the work. The execution of the contract implied an agreement to that effect and the failure of the defendant in this respect operated as a waiver of the time limit of the contract. Moreover, the contract implied that one notice to proceed with the work and only one would be given, and when by reason of its own fault and negligence defendant attempted to segregate the work to be done under the contract and serve notices differing as to the date of completion it again violated the contract. It is argued on behalf of defendant that the contract provided for a suspension of the work under certain circumstances and that there was authority for its act in this provision. There is no foundation for this argument either in the dictionary definitions or in common knowledge as to how these words would be understood and this defense is unavailing. To “suspend” work means to stop work already begun. It cannot apply to a direction to postpone the commencement of work. Moreover, we are not here discussing whether defendant had the right to postpone the work, which in itself and alone is immaterial as the contractor went on. with the work in accordance with the directions of the defendant. The question here is whether defendant could postpone the commencement of work so as to make impracticable the performance of the contract within the time specified therein and then insist *26 on liquidated damages because the contract had not been performed as originally stipulated.
It is also argued on behalf of defendant that the contract is divisible and, admitting that its claim for liquidated damages could not apply to building No. 10, it is said there was still a default on the part of the contractor in not completing the other buildings within the extended time granted and that liquidated damages should follow even though the contractor made no new agreement with reference to the completion of the other buildings. In support of this contention, counsel quote a provision of the contract with reference to an apportionment of liquidated damages when part of the buildings are completed within the time specified by the contract and part are not. But this has application only where a specified time for completion of the buildings still remains a part of the contract, or, in other words, this provision can not apply unless it is first found and held that the defendant is entitled to liquidated damages.
The argument of counsel for the Government is in effect that regardless of the contract the defendant could fix any date which seemed necessary or desirable for the commencement of the work as to one or more buildings, to be completed in 350 days thereafter, and recover liquidated damages if the other buildings were not completed within 350 days from the time when notice to proceed was given with reference thereto. We do not think this can be the law. Certainly it cannot where the fault or negligence of the party claiming liquidated damages is the cause of the delay and the violation of the contract.
We have seen that the defendant negligently failed to make the site for building No. 10 available until 76 days after notice to proceed on the other buildings was given and that it required extra work to be done in connection with the buildings by reason of which it was obliged to grant still further time for their completion. We think (although it is not necessary to so hold in order to deny an award of liquidated damages) that in cases where the party claiming liquidated damages has found it necessary to change the time of completion on account of work not provided for in the contract being *27 required and no new agreement is made, we cannot presume that the contractor agreed to be liable if the work was not completed within the extended time, but, on the contrary, the presumption would be merely that the contractor was to complete the work within a reasonable time and nothing further; in other words, the provisions with reference to liquidated damages would not apply. In any event we think the contract for liquidated damages was eliminated as the failure to make available the site for building No. 10 delayed the completion of the project to the very last. It is said that the delay on this building did not damage the contractor. If this be a fact it is immaterial, for the contractor had the right to this provision whether or not it eventually turned out to its benefit. Plaintiff says it is not a fact. An officer of the contractor testifies that he was delayed and inconvenienced by not being able to work on building No. 10 at the same time as on the others and his testimony is so reasonable we accept it as correct. Plaintiff contracted to finish the buildings at a certain time, but even counsel for defendant do not now contend that that agreement remained in force; and, as we have stated above, no agreement was made providing that if the buildings were not finished by a different time the defendant was entitled to liquidated damages. It should be noted in this connection also that the findings recite that extra work over and above that provided for by the contract was required by defendant which made necessary time extensions aggregating 61 days, and extensions for performance of the contract were accordingly granted. In the case of building No. 10 the notice to proceed was 76 days late because the defendant had negligently failed to acquire title to the premises so the contractor could proceed. Later a further extension was granted. The effect of these acts by the defendant is shown by numerous authorities. In McCloskey v. United States, 66 C. Cls. 105, we held that the failure on the part of the defendant to make available to the contractor the site on which work was to be performed was a breach of the contract. In Worthington Pump & Machinery Corp. v. United States, 66 C. Cls. 230, 240, it was held that where the performance of the contract was required at a fixed date there was an implied contract that the Government would do its part so as to render the per- *28 formanee of the contract possible on the part of the contractor. In Levering & Garrigues Co. v. United States, 73 C. Cls. 566, 578, this court stated that “where a, contractor is prevented from executing his contract according to its terms, he is relieved from the obligations of the contract [as to time of completion] and from paying liquidated damages.” In several cases we have held that where delays are caused by both parties to the contract the court will not attempt to apportion them, but will simply hold that the provisions of the contract with reference to liquidated damages will be annulled.
The contract was not completed until all the buildings were finished. The defendant caused delay in its completion not only by its acts with reference to building No. 10 but by requiring extra work over and above that provided for in the contract and part of this, as we shall see further on, was caused by permitting one of its own contractors to impede the work of the prune contractor. Penalties are not favored by the courts when, as in the case before us, it does not appear that any actual damages have been sustained. They are “enforced only after the demandant therefor has shown that he himself has strictly complied on his part with all the contract requirements prerequisite to such enforce-, ment.” Jefferson Hotel Co. v. Brumbaugh, 168 Fed. 867, 874. In United States v. United Engineering Co., 234 U. S. 236, 242, it was held that—
* * * when the contractor has agreed to do a piece of work within a given time and the parties have stipulated a fixed sum as liquidated damages * * * for each day’s delay, * * * the other party must not prevent the performance of the contract within the stipulated time,
and in such a case, though the completion of the work is delayed by the fault of the contractor, liquidated damages are waived.
The argument on behalf of defendant mentions “findings of fact” as having been made by the contracting officer, and the contract provides that such findings, if made, respecting the causes and extent of delays “shall be final and conclusive on the parties hereto, subject only to appeal, within 80 *29 days, by the contractor to tbe head of the department concerned, whose decision on such appeal as to the facts of delay shall be final and conclusive on the parties hereto.” The evidence fails to show that the contracting officer executed what might properly be called “findings of fact” and we think if he had done so it would be immaterial in considering the matter of liquidated damages for which, under our holding stated above, the plaintiff is not liable.
In support of the argument for defendant, counsel cite the case of Robinson, Administrator, v. United States, 57 C. Cls. 7, but in that case the contract was altogether different from the one before us, in that it provided that one day should be added to the contractor’s time for completion for each day’s delay caused by the Government. Consequently, the date for completion was fixed and extended to a certain date by the contract. The court therefore held that damages must be computed from that date as if it had been so stated in the contract. The case last cited above, in our opinion, has no application.
The plaintiff on his part, as successor to the contractor, claims damages for overhead expenses for 76 days’ delay in the work caused, as he contends, by reason of the fact that the construction of building No. 10 was delayed for that length of time, and asks that damages be allowed in the sum of $178 a day for this period, or a total of $13,528. We are quite clear that the plaintiff is not entitled to all of this sum. Neither the contractor nor the defendant was the sole cause of the delays. The evidence shows that while the extension of time granted for the completion of building No. 10 delayed the completion of the project, it did not retard the work on the other buildings. These delays would have occurred in any event regardless of whether or not the work on building No. 10 was postponed. The delays on the other buildings were caused partly by the contractor but for the greater part by additional work required by defendant, which the contractor in part performed at an agreed price and in part is now making a further claim for compensation thereon. Where the work was done at an agreed price this would include the overhead, and if judgment is awarded plaintiff for a greater amount than has been *30 paid for any extra work it will be for the reasonable value thereof, which would include overhead. Moreover, the evidence fails to show how much delay was caused by the contractor failing to have sufficient workmen, and it may or may not have been considerable. The main point in this connection is that as far as the delay is concerned with reference to buildings other than No. 10, it was not caused by any act of the defendant except in requesting or demanding that extra work be performed and for that work the contractor will be duly allowed in computing the judgment to be rendered herein. The payment for this work, whether agreed upon by the parties or allowed by the court, will presumptively include the amount of overhead caused thereby, if there was any additional overhead. We think it is very definitely shown that no overhead can be allowed on account of the delay with reference to buildings other than No. 10. In this connection it should be noticed that some of the delay was the result of the failure of a subcontractor to complete his part of the work, and the delay of this party is shown by the evidence to have been caused by the contractor. It is not possible to separate and fix the amount in each instance which can be charged respectively to the contractor or the defendant up to September 24, 1980, which is the date when all the buildings except Nos. 1, 5, and 10 were completed. It is obvious that no claim for overhead can be allowed for delays prior to September 24, 1930.
There is another matter which must be taken into consideration in determining whether any overhead can be allowed. The contract provided for change orders and for an extension of time by the contracting officer when made necessary thereby. It also provided that when extra work was required the contractor should be compensated for doing it. In such a case, we do not think that, where an extension is granted on request of the contractor, any claim for additional overhead can properly be made. The contractor, however, on buildings other than No. 10 used more time than was granted by the extensions. We think no overhead can be allowed for this additional time unless the contractor shows it was without fault in using it and the con *31 trary appears from the evidence. Building No. 10 was completed within the extended time, but this building and Nos. 1 and 5 were all completed and accepted at the same time and there is no way of separating the overhead on these buildings from that on No. 10. Plaintiff’s claim for overhead must fail for want of proof.
Plaintiff claims $1,077.69 for the costs of making performance tests of the concrete which the contractor supplied in carrying out the work required by the contract.
The contract required that the contractor should “furnish promptly, without additional charge, all reasonable facilities, labor, and materials necessary for the safe and convenient inspection and test that may be required by the inspectors,” and also that “Special, full size, and performance tests shall be as described in the specifications.” Certain tests were required by defendant for the purpose only of determining whether the concrete could be depended upon to safely carry the design live load. The result of the tests developed that the concrete would carry twice the' design load for which it was intended, and it was thereupon accepted as satisfactory. There were no specifications attached to the contract with reference to the live load which the concrete could safely carry. The test required, as we think, was a special and “performance test,” and, not being described in the specifications, plaintiff could not be required to perform it without payment. There is no dispute about the cost of making these tests, and plaintiff is entitled to recover $1,077.69 on this item.
A claim is made for $10,321 overhead on account of rock excavation. What has been said above with reference to allowance for overhead is sufficient to dispose of this item; but possibly, as this is the subject of a separate claim, it would be better to add a few words of explanation. This overhead is asked on account of extra work required in the way of rock excavation, all of which was performed not by the prime contractor but by the subcontractor. The contractor was allowed by a change order $19,778.86 for this work. The change order was based upon the contractor’s actual cost plus 10 percent to cover overhead and profit. Specicifically, plaintiff’s claim is that he was not allowed for *32 overhead but simply for profit and that there should have been an allowance for both. The work having all been done by a subcontractor it could not have increased the contractor’s overhead very much, if at all. The contracting officer ruled that the amount allowed (10 percent) was sufficient to pay for both profit and overhead under the circumstances. This was a question of fact as to which the decision of the contracting officer was conclusive under the contract. Moreover, there is a lack of evidence to show that the amount allowed was not fair and equitable.
Plaintiff claims $1,319 for removal of surplus rock and regrading. An independent subcontractor, in digging the ditches necessary under its contract, threw out rock and soil ■and left this debris on the surface in such a manner that the provisions of the original contract with reference to grading were not complied with. The defendant required the prime contractor to remove this rock and do the necessary regrading in accordance with the specifications. The evidence shows that this work cost $1,349. The principal defense to this claim is that the liability, if any, was on the part of the subcontractor and not upon the defendant. We think the defendant was liable for the acts of its subcontractor and that plaintiff is entitled to recover the amount claimed.
Another claim is for $1,643.54 for metal ducts. Plaintiff’s right to recover turns upon the interpretation of paragraph 19, page 21C-6, of the specifications for general instruction’s, which reads in part as follows:
Provide all sheet metal ducts shown or required which are not elsewhere specified to be included under other contracts, * * *.
It appears, however, that the Thomas Plumbing & Heating Company was required to “furnish and install all necessary galvanized-iron work, including ducts from diet kitchens to exhaust fans in Main Building No. 1.” The contracting officer ruled in effect that under the contract the Thomas Plumbing & Heating Company was required only to furnish the galvanized-iron work or galvanized ducts to be connected with the exhaust-fan system. This was erroneous. The *33 ducts in question were to be made of galvanized iron, and the Thomas Company was required to furnish “all necessary galvanized iron work”. [Italics ours.] The words “including ducts from diet kitchens to exhaust fans in Main Building No. 1” are not an expression of restriction but merely a specification to make more certain. Under the contract, the contracting officer’s decision was final in disputes as to questions of fact but he was given no authority to determine the proper construction of the contract.
The defendant contends, on the authority of Bowe v. United States, 42 Fed. 761, 778, that the plaintiff cannot recover on this item for the reason that the contractor made no protest against the decision of the contracting officer and filed a claim with the Comptroller General. We axe clear that the case cited has no application as the decision therein was founded upon a provision in the contract to the effect that no allowance should be made for extras “unless provided for beforehand by written agreement”.
The next claim is for $2,555.52, copper flashing for cornices of gable roof. The specifications required that “metal covering of all projecting eorniees * * * shall be of copper” '[italics ours]. The contracting officer held that the terra cotta gables were to be covered with copper flashing. This claim turns upon the construction of the words “cornices” and “terra cotta gables” as used in the contract. The words “cornice” and “gable,” as defined by the dictionaries, refer to different details of construction, and we think that a “cornice” does not include a “gable.” But conceding that the contract was ambiguous in this respect, a reasonable construction should be put upon it. Terra cotta is among the most durable of building materials. There is not the slightest necessity of putting a metal covering over it, and it is a matter of common knowledge that this is seldom, if ever, done, and that to so cover it would generally mar the architectural effect. We are clear that plaintiff is entitled to recover on this claim also.
It follows from what has been said above that the plaintiff is entitled to recover $4,632.57 deducted by defendant as liquidated damages; $1,077.69, cost of tests not required by the contract; $1,349.00 for removing surplus rock; $1,643.54 for *34 metal ducts; and $2,555.52 for copper flashing furnished in response to defendant’s demand but not required by the contract. These items total $11,258.32, for which judgment will be rendered in favor of the plaintiff. It is so ordered.
Williams, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.
ON MOTION FOR NEW TRIAL
Defendant’s motion for new trial was overruled June 3, 1940 in a Memorandum Per Gwriarn,, as follows:
The opinion of the court states that the case of Bowe v. United States, 42 Fed. 161, has no application because it was rendered under a contract that provided no allowance should be made for extras “unless provided for beforehand by written agreement”. Counsel for defendant call attention to the fact that there was a somewhat similar provision in the contract in suit with reference to extras and object to the allowance of $1,643.54 for metal ducts'upon the ground that the evidence does not show that this provision was complied with. This provision does not militate against the conclusion of the court. The court did not hold that the metal ducts were extras. We think the word “extra” as used in the contract refers to some work or material which was not mentioned in the contract. In the instant case the metal ducts were specified in the contract, but, as we held in the opinion, it was provided that they should be supplied by another contractor and it was simply a violation of the contract to require plaintiff to supply them. Plaintiff, however, had no choice but to yield to the wrongful construction placed on the contract; otherwise it would not, under defendant’s view, have completed its work and been entitled to receive anything whatever. What we have said above should not be considered as implying that we agree with all that is said in the Bowe case, supra. We do not, but think it is not necessary to further discuss this matter.
*35 Tbe motion for new trial must be overruled. It is so ordered. ,
WhitakeR, Judge, took no part in the decision of this case.